506 P.2d 830

**REALTY WEST, INC., Plaintiff-Respondent,**

v.

**Chester R. THOMAS, Defendant-Appellant.**

**No. 10941.**

Supreme Court of Idaho.

Feb. 15, 1973.

Jon N. Wyman, of Kraft & Wyman, Boise, for defendant-appellant.

Robert L. Trabert, Nampa, for plaintiff-respondent.

DONALDSON, Chief Justice.

In January of 1970, defendant-appellant Chester R. Thomas was the owner of personal property known as "Paul's Pizza," located on leased ground at 139 Nampa-Caldwell Boulevard in Nampa. On January 15, 1970, Thomas entered into an agreement with plaintiff-respondent Realty West, Inc., whereby Thomas agreed, *inter alia*, to the following terms:

"In the event that you [Realty West] * * * shall find a buyer ready and willing to enter into a deal * * * or that during your employment you place me in contact with a buyer to or through whom at any time within 90 days after the termination of said employment I may sell or assign said personal property, or any substantial portion thereof, I hereby

agree to pay you in cash for your services a commission equal in amount to 7% of [the] selling price. * * * This agreement expires at midnight on April 15th, 1970 * * *. In case of suit or action on this contract, I agree to pay such additional sum as the court may adjudge reasonable as plaintiff's attorneys fees." Plaintiff's Exhibit 2.

On May 26, 1970, Thomas himself sold the property which was the subject of his contract with Realty West. Subsequently, Realty West demanded a commission amounting to seven percent ($2,065) of the sales price ($29,500) obtained by Thomas. When payment was refused, Realty West commenced this action, contending that it had placed Thomas in contact with the buyer to whom he had sold his property within ninety days after the brokerage term had expired.

After a court trial, the district court entered judgment in favor of Realty West. The court found that within ninety days of the termination of the employment contract, Thomas sold the "Paul's Pizza" property to two purchasers—a corporation known as Brass, Inc. and an individual by the name of Dennis White. The court further found that during its employment, Realty West had placed Thomas in contact with Brass, Inc. Noting that Realty West had placed the defendant in contact with only one of the two buyers of the property, the court concluded that nevertheless this was sufficient to entitle Realty West to its commission under the contract. In addition, the court found that $750 was a reasonable fee for plaintiff's attorneys.

■ The appellant's initial contention is that the trial court erred in finding that Realty West made a good faith effort to find a purchaser for the appellant's property. The appellant submits that in actuality Realty West abandoned or breached its employment contract and that the court should have so found. The court's finding of good faith effort and its implied findings of non-abandonment and non-breach are supported by substantial, competent,

though conflicting, evidence and hence will not be disturbed on appeal. McNett v. McNett, 95 Idaho 59, 501 P.2d 1059 (1972); Resource Engineering v. Siler, 94 Idaho 935, 500 P.2d 836 (1972); Church v. Roemer, 94 Idaho 782, 498 P.2d 1255 (1972); see I.R.C.P. 52(a). The record shows that Realty West not only advertised the property for sale but also contacted numerous prospects, one of whom was involved in the eventual purchase of the property.

■ The appellant's next contention is that the trial court erred in finding that Brass, Inc., was a "buyer" of the property sold by the appellant, within the meaning of the brokerage contract. The appellant argues that Brass, Inc., was not a purchaser but only a financial backer of the sole purchaser, Dennis White. As the district court found, Realty West placed Thomas in contact with Brass, Inc., but it did not place him in contact with White; therefore, if Brass, Inc., was not a buyer, then Realty West would not be entitled to a commission, since it did not place Thomas "in contact with a buyer." The appellant maintains that Realty West was not a "procuring cause" of the sale and that Brass, Inc., was not "a buyer ready and willing to enter into a deal" during the term of the broker's employment. Realty West does not, however, claim its commission for finding "a buyer ready and willing to enter into a deal" during the term of the employment contract. Had this been the realtor's theory of recovery, the appellant's argument might have some validity. Realty West only claims to have fulfilled the second alternative condition contained in the contract—that is, Realty West asserts that "during [its] employment [it placed Thomas] in contact with a buyer to or through whom at any time within 90 days after the termination of said employment [Thomas sold] said personal property." Whether this condition was fulfilled is the determinative issue in this case. Clarke v. Blackfoot Water Works, Ltd., 39 Idaho 304, 228 P. 326 (1924); Leonard v. Fallas, 51 Cal.2d 649, 335 P.2d 665 (1959).

In light of the record herein, there is no merit to the appellant's contention that Brass, Inc., was not a "buyer" to whom within 90 days the property was sold. The sales agreement executed by Thomas as seller designates Brass, Inc. (as well as Dennis White) as buyer. The name of the business was subsequently changed to "Brass Lamp," the trade name used by Brass, Inc. A beer license was applied for and issued to Brass, Inc., as owner of the premises in question. Brass, Inc., as owner of the personal property, signed a written lease with the owner of the real property. Under this state of facts, it might successfully be argued that White was not actually a buyer, but it cannot convincingly be asserted that Brass, Inc., was not in fact a buyer of the property sold by the appellant.

■ The appellant's final contention is that the trial court erred in awarding $750 to the plaintiff as attorneys' fees, when the plaintiff's own expert witness testified that $600 would be a reasonable amount for the services rendered by the plaintiff's attorneys. This Court has recently held that a trial court's determination of reasonable attorneys' fees does not necessarily have to be supported by evidence introduced at trial. *See* Dykstra v. Dykstra, 94 Idaho 797, 800, 498 P.2d 1270 (1972). In *Dykstra,* we held that where the amount awarded is fairly supported by services rendered in the presence of the trial court or reflected by its files, the trial court may take judicial notice of what constitutes a reasonable and necessary attorneys' fee, as supported by the advisory fee schedule of the Idaho State Bar. In the case at bar, the record indicates that subsequent to the introduction of testimony as to the reasonableness of a non-contingent fee, additional services were performed by the plaintiff's attorneys, who appeared for another half day of trial and who opposed various post-trial motions filed by the defendant. The amount awarded for plaintiff's attorneys' fees by the district court is fairly supported by the services rendered, as reflected by the record.

■ After this appeal was filed, the respondent, relying upon its contract with the appellant, moved this Court for an order granting the respondent reasonable attorneys' fees for services rendered on appeal. The appellant objected to this motion on the sole ground that the respondent was not entitled to attorneys' fees until the case was finally decided. On oral argument in this case, the respondent's attorney requested a fee of $750. The respondent's motion for attorneys' fees is therefore granted in the amount of $750.

Judgment affirmed. Attorneys' fees on appeal of $750 and costs to respondents.

SHEPARD, McQUADE, McFADDEN, and BAKES, JJ., concur.